## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-_____-CIV-_____

Magistrate Judge _____

AMERICAN DISABILITY ASSOCIATION,
INC., On Its Behalf And On Behalf Of All
Those Similarly Situated To Its Members,

      Plaintiffs,

vs.

BRIDGESTONE/FIRESTONE, INC., an Ohio
corporation,

      Defendant.

_____/

**CIV - FERGUSON**

**MAGISTRATE JUDGE
SNOW**

### CLASS ACTION - COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, AMERICAN DISABILITY ASSOCIATION, INC., a Florida not-for-profit corporation ("AMERICAN DISABILITY"), in its representative behalf of its members, especially, Raymond Cessna, and on behalf of all those similarly situated to its members, including Raymond Cessna, hereby sue Defendant, BRIDGESTONE/FIRESTONE, INC. ("BRIDGESTONE/FIRESTONE"), for injunctive relief, attorneys' fees and costs, pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* (hereinafter the "ADA"), and alleges:

1.      Plaintiff, AMERICAN DISABILITY represents its members and all others similarly situated, as defined by the parameters of Defendant's alleged illegal conduct.

2.      Nashville-based BRIDGESTONE/FIRESTONE, INC. is a subsidiary of Bridgestone Corporation, the world's largest tire and rubber company.  BRIDGESTONE/FIRESTONE manufactures and markets Bridgestone, Firestone, Dayton and house private brand tires.  The

company also produces Firestone air springs, roofing materials, synthetic rubber and industrial products. The company employs 36,900 employees in the United States and 10,600 people in Canada and Latin America.

3.     In addition, its United States Consumer Tire Unit incorporates the company's consumer tire sales, original equipment sales, retail operations and credit card businesses. Further, the Defendant operates automotive service centers where it also sells tires.

4.     In regard to the above, the Defendant owns, leases, and operates retail tire and other retail facilities throughout the continental United States under the name of "Firestone Tire & Rubber Co.", and various other trade names.

## JURISDICTION AND BACKGROUND

5.     This action arises from violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, as more fully set forth herein below. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

6.     Venue lies in this District as the Defendant, BRIDGESTONE/FIRESTONE is licensed to and is transacting business in Broward County, Florida.

## STATUTORY BACKGROUND

7.  On July 26, 1990, Congress enacted the Americans with Disabilities Act of 1990, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of places of public accommodation, including, of course, their accessibility.

8. Pursuant to 42 U.S.C. § 12182 and 28 CFR 36.201(a), no individual shall be discriminated against, on the basis of such individual's disability, with regard to the full and

equal enjoyment of the goods, services, facilities, privileges and advantages of any place of public accommodation by any private entity, who owns, leases (or leases to) or operates a place of public accommodation.

## THE PARTIES AND STANDING

9. Plaintiff, AMERICAN DISABILITY, is a Florida not-for-profit corporation. This organization has members and officers - including Raymond Cessna - with disabilities as defined by the ADA. 36 C.F.R. 104(3)(iii). The organization's specific purposes are to:

(a)     Promote public awareness of the inaccessibility to the handicapped of buildings and other structures; and

(b)     Represent its members' interests by assuring that   places of public accommodation are accessible to, and useable by, the disabled, and that its members and other handicapped persons are not discriminated against because of their disabilities, including legal enforcement of the provisions of the Americans with Disabilities Act and similar state and federal legislation.

10.     The organization members include Raymond Cessna, the President of the Organization, who suffered a spinal injury in 1993, and who has since been an incomplete quadriplegic and confined to a wheelchair. Mr. Cessna is very active in the community, and through the use of hand controls designed for his personal use, does utilize his vehicles for transportation to and from numerous retail and other public accommodation sites throughout South Florida. Mr. Cessna is a regular patron of many of South Florida's major stadium and arena events. He is involved in various programs to counsel and assist young people who have been injured and who are adjusting to life confined to a wheelchair, and he has been an active

volunteer in projects designed for the advancement of spinal cord patients, including the Miami Project at the University of Miami School of Medicine. In short, Mr. Cessna comes into contact, on almost a daily basis, with illegal barriers to the handicapped, and his activities bespeak a commitment and ongoing dedication to their removal.

11.     Raymond Cessna's role, *inter alia,* as a member, and President of AMERICAN DISABILITY is to **seek enforcement and compliance** with the ADA and to **end discrimination against himself**, **his organization, its members**, and all **other disabled persons** throughout the United States. This, in order that he, the members, and all other disabled persons may avail themselves of facilities, services, and goods - which are available to the public at large - without discrimination caused by illegal barriers to access and use of said facilities.

12.     To meet the goals of AMERICAN DISABILITY, Raymond Cessna acts as a tester ("tester") on behalf of the organization and himself, for the purposes of discovering, encountering, and engaging discrimination against the disabled in public accommodations. After ADA violations are brought to Mr. Cessna's attention by employees and agents of AMERICAN DISABILITY, Mr. Cessna's role as tester employs a routine business practice: personally visiting premises where there are alleged ADA violations; engaging those alleged violations, and testing them for the purposes of determining whether they are, in fact, illegal barriers to access or use; sending letters to premises that are determined to be in non-compliance with the requirements of the "ADA"; incorporating in such letters notice of ADA non-compliance and a request that a plan of compliance be drawn and revealed to AMERICAN DISABILITY. If there is no satisfactory resolution of the perceived violation(s), the matter is referred to counsel for litigation; and at **least** one return visit is made to the premises

-4-

to ascertain its status.  This business practice is now set forth in some further detail.

13.    In the event Mr. Cessna encounters barriers to access and use, he does engage those barriers - done so with respect to numbers of Defendant's properties - as well as avail himself of the property, as a whole - to the extent possible - for the purpose of establishing discrimination of the disabled through denial of access to the  property, and to the services, goods, and amenities provided thereon. In doing so, Mr. Cessna did personally, and on behalf of AMERICAN DISABILITY, suffer legal harm/injury, which is deemed to be such by exposure to violations of the ADA, and a disabled person's statutory right to be free from exposure to such violations of the ADA and the regulations implementing the ADA (28 CFR 36.201(a) and 36.104, and Standards for Accessible Design 28 CFR, pt. 36, App. A). The particulars of the violations in the instant case,  which form the basis of Mr. Cessna's legal injury are more fully set forth in Paragraph 24, (1) through (4),  where the specifics of the instant claim and some of the violations of Defendant are chronicled.

14.    After encountering said discrimination, as in the instant case, it is the policy and procedure of AMERICAN DISABILITY  to send a notice letter by United States Mail to alleged violators. A copy of one of the letters sent herein is attached hereto as Exhibit "A". The intent of the notice letter is to inform putative violators that they are in violation of the ADA and applicable regulations, and that Plaintiff seeks compliance through the elimination of specific barriers to access and use, encountered by Mr. Cessna. The notice letter seeks a plan for reasonable compliance, which plan, by its terms, will cause the elimination of said barriers in the future.

15.    Throughout the existence of AMERICAN DISABILITY, various violators, who

have received notice, have responded, while others have not.  In this regard, although numerous letters of violation were sent to BRIDGESTONE/FIRESTONE regarding specific properties, none of the notice letters was responded to by BRIDGESTONE/FIRESTONE.

16.     As to those others who have responded in other situations, the responses have varied from conciliatory letters of appreciation - with pledges  for conscientious removal of barriers in the near future - to responses containing threats of criminal prosecution, evincing no desire or intention of remedying discriminatory practices. Still other recipients of the notice letter have sought specific technical information about violations in order to evaluate AMERICAN DISABILITY claims. As to these, AMERICAN DISABILITY has responded, most frequently, that it has limited financial resources - while awaiting sought for grant money. AMERICAN DISABILITY requests a specific plan of remediation and does impart, in many instances, technical information.  It is not the intention of AMERICAN DISABILITY to maintain a dialogue, but, rather, to seek immediate and reasonable compliance.  Herein, the Defendant, BRIDGESTONE/FIRESTONE, has placed itself, in part, squarely as one that did not reply and as one who will not change its practice.

17.     With respect to those notice letter recipients who do voluntarily and amicably comply without court intervention, as well as those who refuse to unequivocally comply, but rather, attempt to engage in dialogue, as well as those who openly refuse to comply or ignore the letter and do not reply at all - which group include the Defendant herein -  it is the policy and practice of Raymond Cessna,  to act as **tester** in an ongoing capacity.  This means that AMERICAN DISABILITY continues to monitor all notice letters sent to violators as well as follow-up correspondence, and Mr. Cessna does **intend to, has, and will**, as an **absolute**

certainty, physically travel to and present himself to all properties wherein a notice letter was sent, to **determine compliance**, *vel non*, with the ADA, and the organization's notice letter.

18.      With respect to the instant Defendant, Mr. Cessna, through his organizational duties as tester, has a realistic, credible, existing and continuing threat of illegal discrimination, and legal injury, through exposure to illegal barriers to access and use, and other violations of the ADA - which violations are deemed by the Act and regulations to be discriminatory in nature and violative of Mr. Cessna's statutory right to be able to fully enjoy access to and enjoyment of public accommodations. The Defendant's properties remain in **non-compliance, as** of the **filing hereof**, and said non-compliance can be **reasonably expected** in the **future** due to the length of time said property has not been in compliance, as well as Defendant's failure to comply even though notice of its violation was received by it. BRIDGESTONE/FIRESTONE refuses to commit to a specific plan and schedule of immediate remediation, and there will not be remediation without court intervention.   In addition, members of AMERICAN DISABILITY, the putative class, and especially Mr. Cessna, as tester, cannot now or in the future use Defendant's properties without the fear of being threatened by, or actually being exposed to legal injury, now, or in their future visits, as long as barriers to access and use remain.   Therefore, it is substantially certain that Mr. Cessna, members of AMERICAN DISABILITY, and members of the putative class will suffer legal injury in the future owing to the future denial of barrier free access and use of Defendant's premises, when they visit Defendant's properties as tester, and otherwise, periodically, unless injunctive relief is granted.

19.      **Even with** this **lawsuit** and/or the specter of injunctive relief being granted by this Honorable Court, Mr. Cessna, on his certain to be return visits to the premises, will likely

be subject to and legally injured by the violations herein complained of.

20.    There are numerous violations of the ADA at the BRIDGESTONE/FIRESTONE retail facilities and these will later be detailed with specificity.  Suffice it to say, that numerous disabled members of the motoring public will be exposed to these legal harms and illegal discriminations, unless this Honorable Court intervenes.  This Defendant, BRIDGESTONE/ FIRESTONE, has shown no likelihood of voluntary compliance.

21.    The class to be represented by Plaintiffs is so numerous that joinder of each individual member is impracticable.  As determined by Congress in 1990, and will be set forth hereinafter, at that time there were approximately forty-three million (43,000,000) Americans with one or more physical or mental disabilities, and that number has increased since 1990 and continues to increase.  A great many of those individuals are exposed and subjected to the discrimination alleged herein at BRIDGESTONE/FIRESTONE owned, operated, leased, and otherwise controlled retail outlets.  According to the 1994-95 Census Bureau on Americans with Disabilities, over 1.8 million use a wheelchair and an additional 5.2 million use a cane, crutches, or a walker on a long term basis.

22.    Defendant, BRIDGESTONE/FIRESTONE is required  to remove architectural barriers to the physically disabled, when such removal is **readily achievable** for Defendant's place of public accommodation that has existed prior to January 26, 1992, 28 CFR § 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure, to the **maximum extent feasible,** that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR

-8-

36.402.   Finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility **must be readily accessible** to and useable by individuals with disabilities as defined by the ADA.   In any event, the retail outlets are in violation by virtue of the particular parameter that is applicable.

23.     Appendix A to Part 36—Standards for Accessible Design (28 CFR pt. 36, App. A) - sets out guidelines for accessibility for buildings and facilities. These guidelines are to be applied during "design, construction and alteration" of such buildings and facilities to the extent required by regulations issued by Federal Agencies, including the Department of Justice, under the ADA.   The guidelines or standards have been held by the Department of Justice to apply to existing facilities that were constructed before January, 1992.

24.     The Defendant is in violation of 42 U.S.C. § 12181 *et seq.*, and 28 CFR § 36.302 *et seq.*, and is discriminating against the Plaintiff and its members and the disabled population by failing, *inter alia*,

(1)     <u>Disabled Parking</u>

(a)     To provide the requisite number of accessible parking spaces, if any at all;

(b)     To properly locate and mark same;

(c)     To have the appropriate sized and configured accessible parking spaces;

(d)     To properly sign those spaces; and

(e)     To locate those parking spaces nearest the accessible entrances so that access to the counter area and service center does not require travel through vehicular traffic.

(2)     <u>Accessibility</u>

    (a)     To provide an accessible path of access, without steps, curbs, excessive thresholds and other barriers within the **ADA width and slope** requirements from drives and accessible parking spaces to and through the primary entrances to the service center, counter areas, restrooms, water dispensers, public telephones and other facilities thereof;

    (b)     To provide handrails on both sides of existing ramps that have a rise greater than 6 inches;

    (c)     To provide lowered accessible <u>service counters</u> as prescribed and required by the ADA;

    (d)     To provide <u>public telephones</u> with an accessible path of access thereto, within the requisite reach parameters and with clear floor space in front, and with the requisite hearing aid capability and volume controls;

(3)     <u>Signage</u>

    (a)     To provide signs at inaccessible entrances and paths of access indicating the direction to and location of the accessible entrances and paths of access; and

(4)     <u>Public Restrooms</u>

    (a)     To provide proper initial access into the restrooms;

    (b)     To provide proper identifying signage, mounted at appropriate locations;

    (c)     To provide proper door width, hardware, thresholds, maneuvering clearances, closing delays and opening resistence;

    (d)     To provide requisite maneuvering clearances within the restrooms and/or stalls;

    (e)     To provide toilets with grab bars of the appropriate dimensions mounted in the required locations;

    (f)     To provide toilets mounted within the requisite height

-10-

requirements;

(g)     To provide lavatories mounted at the appropriate height, with proper knee and maneuvering clearances, with requisite accessible faucet controls, and with pipes which are properly insulated;

(h)     To provide controls and dispensers mounted at the requisite heights and with proper maneuvering clearances;

(i)     To provide mirrors and paper towel dispensers mounted within the requisite height parameters.

25.     The above list and accompanying illustrations constitute a sort of check list. (**See** photographic Exhibits "B" through "O").  Not every facility has all of these violations and other yet unnamed violations occur at other facilities.  Suffice it to say: BRIDGESTONE/ FIRESTONE is not disabled friendly and is subjecting multiple Americans with disabilities and within ADA protection, to the real and to the legal harm of being exposed to illegal conditions.

26.     Mr. Cessna does qualify the Plaintiff herein with standing. He also gives standing to the Class as they are individuals who are similarly situated, having suffered and who will suffer discrimination at BRIDGESTONE/FIRESTONE.  They need not be "testers" to qualify standing by and through Mr. Cessna - he does it for them.  In addition, it is statistically probable to get some approximation as to how many other disabled Americans will be subject to this discrimination.  It is averred that in addition to the standing herein of the Plaintiff directly from the standing of Mr. Cessna, the class itself, by its very nature of being composed of those who have been and will be subjected to the legal harm - and there is a certainty that those putative discriminations exist - creates its own standing.

## CLASS ACTION ALLEGATIONS

27.      Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1) -

(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class").

### "THE CLASS"

All people in the United States who are wheelchair bound and who suffer with

disabilities within the purview of 36 C.F.R. 104(3)(iii), who have been and who were, prior

to the filing of the Class Action Complaint through the pendency of this action, entitled to the

full and equal enjoyment of the goods, services, programs, facilities, privileges, advantages,

or accommodations of any of the Defendant's facilities, which are retail outlets that it owns,

leases (leases to) or operates, and who were denied same or will be denied same, by one or

more violations of Title III of the Americans with Disabilities Act and its duly promulgated

regulations.   This includes those who know that it is futile to attempt to navigate the ADA

barriers, as they have actual "knowledge" that BRIDGESTONE/FIRESTONE has no intent to

become ADA compliant.

### "SUB-CLASSES"

### Sub-Class 1.

All those members of the Class who have been,  will be, or would have been

(knowledge) patrons of those of Defendant's facilities that have existed prior to January 26,

1992.

### Sub-Class 2.

All those members of the Class who have been,  will be, or would have been

(knowledge) patrons of Defendant's facilities that have been altered since January 26, 1992.

### Sub-Class 3.

All those members of the Class who have been,  will be, or would have been (knowledge) patrons of Defendant's facilities that were designed and constructed for first occupancy subsequent to January 26, 1993.

Plaintiff believes that Class numbers are at least in the thousands, and that they are geographically dispersed.  It would, therefore, be impracticable to bring multifarious individual actions.

28.    The questions of law and fact common to the members of the class, such as the degree of ADA non-compliance, specific determination of the non-compliance and the structural modifications necessary, which will be raised and adjudicated herein, predominate over any questions affecting only the individual plaintiffs or individual members of the class. As a result, this class action is a prescribed method for reaching a fair and efficient adjudication of the controversy raised herein.

29.    The claims and defenses of BRIDGESTONE/FIRESTONE will be the same as to each member of the class as they will be to the class itself - typical.  There is no need herein for multitudinous  determinations of the same questions of violations *vel non*, which might, in fact, be inconsistent or varying and the risk of inconsistent adjudication persists, which would establish an incompatible standard of conduct for the party opposing the class.

30.    Plaintiff, as the representative party, will fairly and adequately protect the interests of the putative Class members, and in addition, as Plaintiff alleges the same questions of law and fact apply to BRIDGESTONE/FIRESTONE's obligations to it as they do to Mr. Cessna - relevant to injunctive relief being granted - there is no antagonistic interest between

-13-

Plaintiff, Mr. Cessna, and the putative Class he purports to represent.

31.     As the only relief that this Honorable Court can fashion is an injunction, as the cost of litigation is high or prohibitive, as each individual has no prospect of any monetary recovery; a class action praying for a single injunction - which would protect the Class as a whole - is superior to any other form of individual actions.

## ADDITIONAL ALLEGATIONS

32.     Plaintiff has retained the undersigned counsel and is obligated to pay reasonable attorneys' fees, including costs and expenses incurred in this action. Plaintiff is entitled to recover its attorneys' fees, costs, and expenses from Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

33.     All conditions precedent to suit have been met by Plaintiff or have been waived by Defendant, and there are no applicable exhaustion of remedies requirements, or notice requirements under the ADA for bringing this private action for injunctive relief - even though such has been provided as aforesaid.

34.     Pursuant to 42 U.S.C. § 12188, this Court is provided with the authority to grant Plaintiff injunctive relief, including an order to alter the Defendant's facilities to make those facilities readily accessible to the Plaintiff, its members, the putative class, and all other persons with disabilities, as defined by the ADA, or by closing the facility either temporarily or permanently until such time as the Defendant cures its violations of the ADA.

## CONCLUSION

**WHEREFORE,** Plaintiff respectfully requests that the Court grant:

(a)     A permanent injunction providing for coercive relief against the

-14-

Defendant to make such facilities readily accessible to and useable by individuals  with disabilities to the extent required by the ADA;

   (b) An award  of attorneys' fees, costs and litigation expenses  pursuant to 42 U.S.C. § 12205;

   (c) Certify a class or classes, if need be, to proceed with this action; and

   (d) For such other and further relief as the court deems just and proper.

**DATED** this ____ day of **April**, 2001.

      **WEISS & HANDLER, P.A.**
      Attorneys for Plaintiff
      One Boca Place - Suite 218-A
      2255 Glades Road
      Boca Raton, Florida  33431
      Telephone: (561) 997-9995
      Facsimile: (561) 997-5280

      BY: _____
      DONALD FELDMAN
      Florida Bar No. 024110
      WILLIAM M. FRANZ
      Florida Bar No. 848298

-15-

## AMERICAN DISABILITY ASSOCIATION, INC.
4699 North Federal Highway, Suite 109A
Pompano Beach, Florida 33064

••••••••••••••••••••••••••••••••••••••

October 12, 2000

TO:   Firestone Tire & Rubber Co.
      50 Century Blvd.
      Nashville, TN 37214

RE:   541 Northlake Blvd.
      Riviera Beach, FL

Dear Sir/Madam:

Please, let this letter serve as formal notice that the above address lacks compliance with the (federal) American with Disabilities Act.

Please be further advised that there are provisions under the Internal Revenue Code that may ameliorate the financial burdens associated with your compliance.

**FAILURE to COMPLY or REPLY** can result in private suit or formal complaint to the Department of Justice. Please preclude these actions by your efforts to accommodate individuals with disabilities so everyone may enjoy the amenities of your establishment.

A written response is required within ten (10) days that specifies how you will comply with correcting the indicated violations with a reasonable time frame.

Thank you on behalf of the above Association and other individuals with disabilities.

ACT0121


EXHIBIT "A"

October 12, 2000
Page 2 of 2

TO:     Firestone Tire & Rubber Co.
        50 Century Blvd.
        Nashville, TN 37214

**Violations, which may not be all inclusive – pending detailed inspection:**

1.      Disabled parking is not compliant.

2.      Accessible route into the building is not compliant.

                        Very truly yours,

                        AMERICAN DISABILITY
                        ASSOCIATION, INC.

                        RAYMOND CESSNA,
                        President

ACT0121



ACT 0122

001

There are no accessible disabled parking spaces at this location, violating
Sections 4.1.2(5)(a), 4.6.2, 4.6.3 and 4.6.4 of the ADAAG.   (See 1-A at 9)

EXHIBIT "B"



There are no disabled parking spaces at this location, violating Sections 4.1.2(5)(a),
4.6.2, 4.6.3 and 4.6.4 of the ADAAG.   (See:1(a)at 9)

EXHIBIT "C"



ALT0119

001

The existing accessible disabled parking space is not designated as reserved by a sign showing a symbol of accessibility, violating Section 4.6.4 of the ADAAG.

The existing accessible parking space has a 36-inch access aisle adjacent to it not providing the required 60-inch access aisle as per Sections 4.1.2(5)(a) and 4.6.2 of the ADAAG.

(See 1(c) and (d) at 9).



EXHIBIT `D`





The existing accessible disabled parking spaces do not have the required 60-inch access aisle adjacent to them, violating Section 4.6.2 of the ADAAG.

The accessible parking signs are mounted at a height that can be obscured by a vehicle parked in that space.  This violates Section 4.6.4 of the ADAAG.

(See: 1(c) and (d) at 9).

EXHIBIT `E`



*OO1*

The existing accessible disabled parking spaces do not have a 60-inch access aisle adjacent to them as required by Section 4.6.2 of the ADAAG.

There is a 6-inch change of elevation from the parking lot to the front entry making it inaccessible.  This violates Sections 4.3.2 and 4.3.8 of the ADAAG.

(See 1(c) and 2(a) at 9-10).

EXHIBIT "F"





There is a 1.5-inch change in elevation at the entry door threshold violating Section 4.13.8 of the ADAAG.

(See:2(a) at 10).

EXHIBIT `G´





Inaccessible path of access to restrooms, water dispensers, etc., violating Section 4.3 of the ADAAG.

The existing service counter does not provide a portion 36-inches wide and 36-inches high, violating Section 7.2 of the ADAAG.

(See:  2(a) and (c) at 10).

EXHIBIT "H"





The existing counter does not provide a portion 36-inches wide and 36-inches high, ciolating Section 7.2 of the ADAAG.

(See: 2(c) at 10).

EXHIBIT `I`



The signage to the public restroom does not comply with Section 4.30 of the ADAAG.

The door hardware requires tight grasping or twisting of the wrist, violating Section 4.13.9 of the ADAAG.

(See:  4(b) and (c) at 10).



ACT 0123



002

The door hardware requires tight grasping or twistin of the wrist –
violating Section 4.13.9 of the ADAAG.

The signage to the public restroom does not comply with Section 4.30  of
the ADAAG.

(See:  4(b) and (c) at 10).





ACT 0122

006

The existing mirror is mounted above the 40-inch height as required by Section 4.19.6 of the ADAAG.

The paper towel dispenser as well as the existing sink faucets require tight pinching and grasping violating Sections 4.19.5, and 4.27.4 of the ADAAG.

(See: 4(c), (h) and (i) at 10-11).   EXHIBIT "L"



ACTO122

004

The height of the existing water closet does not meet the minimum height
requirement of 17-inches, violating Section 4.16.3 of the ADAAG.

There are no grab bars mounted for the water closet, violating Sections
4.16.4 and 4.26 of the ADAAG.    EXHIBIT `m´

ACT 0122



003

The flush controls on the existing water closet is not mounted on the wide side of the toilet area as required by Section 4.16.5 of the ADAAG.

The existing sink does not provide knee clearance as required by Section 4.19.2 of the ADAAG.

The existing sink faucets require tight grasping or twisting of the wrist, violating Sections 4.19.5 and 4.27.4 of the ADAAG.

(See: 4(g) at 11).          



*ACT 0124*

*003*

The drain pipe under the lavatory does not have the required insulation, violating Section 4.19.4 of the ADAAG.

The faucets require twisting of the wrist, violating Sections 4.19.5 and 4.27.4 of the ADAAG.

The paper towel dispenser requires tight pinching or grasping, violating Section 4.27.4 of the ADAAG.

The existing mirror is mounted above the 40-inch height required by Section 4.19.6 of the ADAAG.   (See:  4(g), (h) and (i) at 11

**EXHIBIT "O**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

AMERICAN DISABILITY ASSOCIATION, INC., On Its Behalf And On Behalf Of All Those Similarly Situated To Its Members,

**DEFENDANTS**

BRIDGESTONE/FIRESTONE, INC. an Ohio corporation,

CIV-FERGUSON

MAGISTRATE JUDGE
SNOW

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Broward
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(561) 997-9995

APPL 01-6529-CIV-WDF/Snow

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Donald Feldman, Esq./William Franz, Esq.
Weiss & Handler, P.A., Suite 218-A, 2255
Glades Rd., Boca Raton, Florida 33431

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:     CLASS ACTION
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION  (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE 42 USC Section 12188 and 42 USC

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) Section 12205 - Violations of Title III of the Americans with Disabilities Act.

IVa. 5-10 days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN  (PLACE AN × IN ONE BOX ONLY)

Transferred from                                          Appeal to District
☒ 1 Original     ☐ 2 Removed from     ☐ 3 Remanded from     ☐ 4 Refiled     ☐ 5 another district     ☐ 6 Multidistrict     ☐ 7 Judge from
Proceeding          State Court          Appellate Court                          (specify)          Litigation          Magistrate Judgment

## VII. REQUESTED IN   CHECK IF THIS IS A CLASS ACTION     DEMAND $     Check YES only if demanded in complaint:
COMPLAINT:      ☐ UNDER F.R.C.P. 23                                        JURY DEMAND:  ☐ YES  ☒ NO

## VIII. RELATED CASE(S)  (See instructions)
IF ANY                                JUDGE _____     DOCKET NUMBER _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD
                  Donald Feldman     4/1/01

FOR OFFICE USE ONLY:  Receipt No. 114209     Amount: 150.00

Date Paid: 4/4/01     M/ifp: _____